IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EUGENE DOUGLAS MANNING, | : | CIVIL ACTION NO. **1:CV-13-0831** |
| | : | |
| Plaintiff | : | (Judge Jones) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| PAMELA ROSS, *et al.*, | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I.    BACKGROUND

On April 2, 2013, Plaintiff, an inmate currently confined at the Franklin County Jail located in Chambersburg, Pennsylvania ("FCJ") filed, *pro se*, the instant civil rights action pursuant to 42 U.S.C. § 1983.  (Doc. 1).  On April 24, 2013, Plaintiff paid the three hundred fifty dollar ($350.00) filing fee.  (Doc. 4).  On May 6, 2013, this action was referred to the undersigned for screening purposes in accordance with the Prison Litigation Reform Act, 28 U.S.C. § 1915.

### II.    STANDARDS OF REVIEW

#### A.    PRISON LITIGATION REFORM ACT

As stated, Plaintiff, an inmate at FCJ, paid the full filing fee. Notwithstanding Plaintiff's payment of the filing fee, the Prison Litigation Reform Act of 1995 (the  "PLRA")[1] obligates the Court to engage in a screening process.  *See Vega v. Kyler*, C.A. No. 03-1936 (3d Cir. 2004), 2004 WL 229073(non-precedential)(if prisoner pays filing fee, civil rights complaint is

---

[1]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

subject to review under 28 U.S.C. § 1915(A), not 28 U.S.C. § 1915(e)(2)(B); *see also Vieux v. Smith*, 2007 U.S. Dist. LEXIS 40859, 2007 WL 1650579 (M.D. Pa.); *Hartz v. Whalen*, 2008 U.S. Dist. LEXIS 71960, 2008 WL 4107651 (M.D. Pa.).

Section 1915(A) provides:

(a) Screening.- The court shall review, before docketing if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) Grounds for dismissal.- On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint if the complaint -

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief against defendant who is immune from such relief.

28 U.S.C. § 1915(A).

**B.      42 U.S.C. § 1983 STANDARD**

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements:  (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.

2005); *Slater v. Susquehanna County*, 613 F. Supp. 2d 653, 660 (M.D. Pa. 2009) (citations omitted); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 550 (M.D. Pa. 2007) ("only those who act under color of state law are liable to suit under section 1983."). "In order to satisfy the second prong [of a §1983 civil rights action], a Defendant does not have to be a state official, but can also be held liable as a state actor." *Slater v. Susquehanna County*, 613 F. Supp. 2d at 660(citations omitted).

It is well-established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id.* Courts have also held that an allegation seeking to impose liability on a defendant based on

supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208.

### C.  Motion to Dismiss

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).
>
> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009

III.    **COMPLAINT ALLEGATIONS**

Plaintiff's Complaint consists of fifteen (15) typed pages, with an additional fifty-two (52) pages of attached, unnumbered exhibits.  (Doc. 1, pp. 16-67).  Plaintiff alleges his Complaint against the following Defendants: (1) Pamela D. Ross, Physican's Assistant at Summit Health; (2) Summit Dermatology Chambersburg Hospital; (3) Orion Hippensteel, Pennsylvania State Police Officer; (4) Douglas Strickland, Pennsylvania State Police Officer; (5) Robert Peterson, Pennsylvania State Police Officer; (6) David Arnold, Chambersburg Chief of Police; (7) David Rush, Chambersburg Police Officer; (8) Robert Johnson, Chamberburg Police Officer; (9) Norman Epstein, CEO of Summit Health; and (10) Dr. Satyajit Mukherjee, Psychiatrist of Summit Health.  (Doc. 1, pp. 3-4). Plaintiff alleges that his First, Fourth and Fourteenth Amendment rights were violated stemming from his arrest that took place on September 1, 2011.  (Doc. 1, pp. 1-2).[2]

---

[2]Because Plaintiff has failed to allege any facts whatsoever that his Fourteenth Amendment due process rights were violated by any Defendant, we will respectfully

Plaintiff alleges that on or around June 9, 2011, he saw Defendant Ross, employed by Summit Health as a Physician's Assistant, for treatment for a cyst, and at this appointment, Defendant Ross allegedly made sexual advances towards Plaintiff. (Doc. 1, p. 8). Plaintiff also alleges that Defendant Ross continued to make sexual advances when Plaintiff went to Summit Health for surgery on July 21, 2011. (Doc. 1, p. 9). At a surgical follow-up appointment on August 4, 2011, Plaintiff alleges that Defendant Ross again made sexual advances towards him, and that the two engaged in sexual relations. (Id.). Plaintiff alleges that he admittedly became attached to Defendant Ross, and that he wrote Defendant Ross letters to which Defendant Ross never objected. (Doc. 1, pp. 9-10).

On August 23, 2011, Plaintiff alleges that on this date, the police "show up at Plaintiff's house with letters Plaintiff shared with Defendant Ross. Police told Plaintiff, Pamela did not call them and she would make no statements concerning him, except to say 'she thought he, Plaintiff had become 'infatuated with her.'" (Doc. 1, p. 10).

On September 7, 2011, Plaintiff was arrested and charged with stalking Defendant Ross. (Id.). Plaintiff was sent to Chamberburg Hospital in September 2011, where he "was told he was delusional, and hospital staff did not believe there was a Pamela Ross, nor did they believe Plaintiff had written [these] so called Pamela Ross letters, nor did they believe this so called Pamela Ross gave her cell phone number to Plaintiff[.] Plaintiff was told all these thoughts were delusional, Plaintiff was committed against his will, [and] Plaintiff met

recommend that this claim be dismissed without prejudice allowing Plaintiff the opportunity to file an Amended Complaint as we do not find futility in allowing Plaintiff to do so. *See Grayson, supra*.

Dr. Mukherjee in [the Chamberburg] Hospital." (Id.). Plaintiff was released from the

hospital on or about September 30, 2011, and was ordered to undergo counseling by a

"County Judge," and his failure to do so would result in Plaintiff being recommitted. (Id.).

Plaintiff states the following in regard to the court-ordered counseling:

52. Plaintiff refused court order to go to counseling concerning this, Plaintiff told Psychiatrist Dr. Lee [that] Plaintiff wasn't going to disrespect Pamela by talking about her without her being present [] to hear what was said.

53. Plaintiff intentionally got himself thrown out of counselling (sic) by intentionally missing (3) appointments in a row. Plaintiff was crushed when Pamela lied to have him arrested [] to cover there (sic) relationship up[.] Plaintiff was as far as he knew going to dies in 4 or 5 months's sic).

(Doc. 1, p. 11).

As a result of the aforementioned facts as described by Plaintiff, Plaintiff was arrested

for stalking, and eventually charged and sentenced for this crime. Plaintiff alleges that his

arrest was in violation of the First, Fourth and Fourteenth Amendments. He states that

"Defendants Hippensteel, Strickland, Arnold, Rush and Johnson did not do proper

investigations before taking their malicious, vindicative actions against Plaintiff [and that]

these crimes were and are unsupported by Probable Cause. The actions of these

Defendants were malicious and intended to cause harm and personal injury to the Plaintiff[.]

The Defendants engaged in a selective and vindictive prosecution for hateful, unlawful

reasons, causing Plaintiff to be lodged in prison for over [ten] (10) [months], and now maybe

spending whatever life Plaintiff has left [] in prison for crimes he did not commit[.] Plaintiff

intent was always genuine and caring for [] Defendant Pamela Ross." (Doc. 10, p. 13). To

summarize Plaintiff's rambling, confusing Complaint, he basically alleges that Defendants

Hippensteel, Strickland, Rush and Peterson violated his Fourth Amendment rights against unreasonable search and seizure when they arrested him for stalking Defendant Ross, that he was falsely arrest in violation of the Fourth Amendment, that Defendants Hippensteel, Strickland, Peterson, Johnson, Rush and Arnold engaged in malicious prosecution of Plaintiff by providing allegedly perjurous statements during Plaintiff's trial, and that Defendants Arnold and Johnson violated Plaintiff's Fourteenth Amendment due process rights by not responding to letters Plaintiff had written to these police officers regarding Plaintiff's alleged false arrest. (Doc. 1, pp. 2-4).

Plaintiff also raises a negligence claim against Defendant Ross for alleged medical malpractice, and a defamation claim against "Defendants" generally for allegedly falsely labeling him a stalker. Plaintiff claims that as a result of the aforementioned facts, he has suffered emotional and physical distress. As relief, Plaintiff requests a myriad of damages, including the following: (1) twenty-five million dollars ($25,000,000.00)in damages against Defendant Ross and fifty million dollars ($50,000,000.00) in damages against Summit Health for alleged medical malpractice; (2) twenty million dollars ($20,000,000.00) in damages against Defendant Dr. Mukherjee, fifty million dollars ($50,000,000.00) in damages from Chambersburg Hospital and one hundred fifty million dollars ($150,000,000.00) in damages from Summit Health "due to their egregious irresponsible behavior [in] allowing Pamela D. Ross to be employed as a medical provider at Summit Health;" (3) punitive damages from all Defendants; (4) fifty million dollars ($50,000,000.00) from Defendants Hippensteel, Strickland, and Peterson; (5) seventy-five million dollars ($75,000,000.00) from Defendant

Arnold; (6) one hundred million dollars ($100,000,000.00) from Defendant Rush; (7) twenty-five million dollars ($25,000,000.00) from Defendant Johnson; and (8) one hundred fifty million dollars ($150,000,000.00) from the Chambersburg Police Department. (Doc. 1, pp. 6-8).[3]

## IV.    DISCUSSION

Immediately, we will respectfully recommend that Defendants Pamela Ross, Summit Health Chambersburg Hospital, Norman Epstein and Dr. Satyajit Mukherjee be dismissed from this action with prejudice because none of these Defendants are state actors or state agencies, which, as discussed, is a prerequisite to filing a § 1983 suit. As stated, Plaintiff states in his Complaint that he filed his action pursuant to 42 U.S.C. §1983, and he avers that his constitutional rights under the First, Fourth and Fourteenth Amendments were violated by Defendants Ross, Mukherjee, Epstein and Summit Health Chambersburg Hospital, which are private actors and a private medical company, respectively.

In *Kalomiris v. Monroe County Syndicate*, 2009 WL 73785, *6 (M.D. Pa.), the Court stated:

> Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors. *Kneipp v. Tedder,* 95 F.3d 1199, 1204 (3d Cir.1996). To establish a claim under this section, the plaintiff must show a deprivation of a "right secured by the

---

[3]Plaintiff cannot seek monetary damages from the named Defendants in their official capacities. To the extent that Plaintiff seeks monetary damages from Defendants, *i.e.* compensatory and punitive damages, he can only sue the state actor Defendants in their individual or personal capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa. 2010); *Gale v. Stori*, 608 F.Supp. 2d 629, 636 (E.D. Pa. 2009).

> Constitution and the laws of the United States ... by a person acting under color of state law." *Id.* (quoting *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1141 (3d Cir. 1995))

*See Pitchfork v. Bor. of Munhall*, 631 F.Supp.2d 636, 651-52 (W.D. Pa. 2007); *Holmes v. Dreyer*, 2010 WL 3791360, *2 (E.D. Pa. 9-28-10); *Brookhart v. Rohr*, 385 Fed. Appx. 67, 69 (3d Cir. 2010)(Per Curiam).  Therefore, we will respectfully recommend that Defendants Ross, Mukherjee, Epstein and Summit Health Chambersburg Hospital be dismissed with prejudice from this action because the individual Defendants are private not state actors, and because Defendant Summit Health Chambersburg Hospital is a private medical company.

The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility.  *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002);  *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).  Based upon the above, we find that it would be futile and prejudicial to Defendants  to allow Plaintiff to amend his pleading against Defendants Ross, Mukherjee, Epstein and Summit Health Chambersburg Hospital.  It is clear that Plaintiff simply cannot maintain his §1983 action against Defendants Ross, Mukherjee, and Epstein because they are state actors not subject to suit in a § 1983 action and against Defendant Summit Health Chambersburg Hospital because it is a private medical company that is not a state agency subject to suit in a § 1983 action.    We find that Plaintiff's present claims against these Defendants must be brought in a negligence action which Plaintiff has to institute against Defendants in state court as a § 1983 action is not the appropriate action or venue for Plaintiff's negligence claims he has attempted to raise on the grounds of medical malpractice.

Furthermore, to the extent that Plaintiff is alleging that Defendants Hippensteel, Strickland, Peterson, Arnold, Rush and Johnson violated his First, Fourth and Fourteenth Amendment rights, we will respectfully recommend that the Court dismiss these claims without prejudice. First and foremost, while Plaintiff has alleged these Defendants personal involvement in relation to his claims, he has not alleged any facts whatsoever to support his claims.

In order to successfully raise a Fourth Amendment false arrest claim under § 1983, the Court in *Kokinda v. Breiner,* 557 F. Supp. 2d 581, 592 (M.D. Pa. 2008)*,* stated:

> A claim under § 1983 for false arrest/false imprisonment is grounded in the Fourth Amendment guarantee against unreasonable seizures. *Garcia v. County of Bucks,* 155 F.Supp.2d 259, 265 (E.D.Pa.2001) (citing *Groman v. Twp. of Manalapan,* 47 F.3d 628, 636 (3d Cir.1995)). To maintain his false arrest claims, "a plaintiff must show that the arresting officer lacked probable cause to make the arrest." *Id.* "Probable cause exists when the totality of facts and circumstances are sufficient to warrant an ordinary prudent officer to believe that the party charged has committed an offense." *Id.*

> "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Twp. of Manalapan,* 47 F.3d 628, 636 (3d Cir.1995). However, unlike a malicious prosecution claim, for which each criminal charge is analyzed independently, a false arrest claim will fail if there was probable cause to arrest for at least one of the offenses involved. *Johnson,* 477 F.3d at 75; *see also Barna v. City of Perth Amboy,* 42 F.3d 809, 819 (3d Cir.1994) (holding that for an arrest to be justified, "[p]robable cause need only exist as to any offense that could be charged under the circumstances").*See also Cummings v. City of Phila.,* 137 Fed. Appx. 504, 506 (3d Cir. 2005).

> In *Irick v. City of Phila.,* 2008 WL 2120171, *8 (E. D. Pa.), the Court stated:

> An arrest may violate the standards of the Fourth Amendment if it is

made without probable cause to believe that a crime has been committed. *Barna v. City of Perth Amboy,* 42 F.3d 809, 819 (3d Cir.1994). Thus, the proper inquiry in a Section 1983 claim based on false arrest is "'whether the arresting officers had probable cause to believe the person arrested had committed the offense.' " *Groman v. Township of Manalapan,* 47 F.3d 628, 634 (3d Cir.1995). If the arresting officer lacked probable cause to make the arrest, the arrestee also has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Id.* at 636 (*citing Thomas v. Kippermann,* 846 F.2d 1009, 1011 (5th Cir.1988)).

In *Reedy v. Evanson*, 615 F. 3d 197, 211 (3d Cir. 2010), the Third Circuit stated that "[i]t is well-established that the Fourth Amendment 'prohibits a police officer from arresting a citizen except upon probable cause.'" (citations omitted).

Based on the aforementioned case law and the facts provided by Plaintiff, we will respectfully recommend that Plaintiff's Fourth Amendment false arrest claim be dismissed without prejudice because Plaintiff has not provided this Court with enough facts to in order for this Court to determine whether he was arrested in the absence of probable cause. We do not find futility in giving Plaintiff the opportunity to properly allege his Fourth Amendment false arrest claim in an Amended Complaint. *See Grayson, supra*.

With regards to Plaintiff's Fourth Amendment illegal search and seizure claim, an obvious issue that must be resolved before the Court can address the merits of Plaintiff's Fourth Amendment unreasonable search and seizure claims is whether these claims are barred by the *Heck* favorable termination rule. In *Heck*, the Supreme Court held that:

an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive

12

order, declared invalid by a state tribunal authorized to make such
determination, or called into question by a federal court's issuance of a
writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing
that relationship to a conviction or sentence that has not been so
invalidated is not cognizable under § 1983.

*Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).

The Third Circuit, in *Surine v. State Police Emergency Response Team, et al.*, 2012 U.S.

Dist. LEXIS 6353, *9 (M.D. Pa. Jan. 19, 2012) was faced with an issue similar to the case at

hand because it had to determine whether a Fourth Amendment unreasonable search and

seizure claim, because it technically led to plaintiff's underlying conviction, was barred by

the *Heck* favorable termination rule.

The Third Circuit in  *Surine* held that the plaintiff's claims in that case were not

barred by *Heck*, stating the following:

> In the Third Circuit, district courts must conduct a fact-based  inquiry to
> determine whether a claim "necessarily implies" the invalidity of the
> underlying conviction.  *Gibson v. Superintendent, N.J. Dep't of Law and
> Public Safety*, 411 F. 3d 427, 450 (3d Cir. 2005) overruled on other
> grounds by *Dique v. New Jersey State Police*, 603 F.3d 181, 188 (3d Cir.
> 2010).
>
> The court, out of an abundance of caution, will not bar any of Surine's
> claims under *Heck's* favorable termination rule.  Surine pled guilty to
> conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 846.
> 21 U.S.C. § 846(a)(1).  It appears from the record and the nature of the
> charges that Surine's guilty plea most likely derived primarily from
> Trooper Madigan's investigation and the subsequent search and seizure
> of hundreds of items from his residence on February 1, 2007.  However,
> the parties failed to provide a list of the items seized from Surine's
> residence and a review of the transcript of Surine's plea colloquy
> indicated the government may have had other evidence available to
> prove that Surine conspired to distribute controlled substances.  (Doc.
> 110-1, Ex. B, at 23).  The court will therefore refrain from applying
> *Heck's* favorable termination rule.

*Surine*, 2012 U.S. Dist. LEXIS 6353, at *9.

Therefore, following the Third Circuit's decision to refrain from barring the plaintiff's Fourth Amendment unreasonable search and seizure claims as *Heck*-barred, out of an abundance of caution, and for the reasons provided by the Third Circuit in *Surine*, we will recommend that the Court refrain from declaring Plaintiff Manning's Fourth Amendment unreasonable search and seizure claims as barred under the *Heck* favorable termination rule. Therefore, we will address whether Plaintiff has stated cognizable Fourth Amendment unreasonable search and seizure claims as described against the Defendants Hippensteel, Strickland, Peterson and Rush.

The Fourth Amendment provides that "No Warrant shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

As stated, Plaintiff alleges that Defendants Hippensteel, Strickland, Peterson and Rush violated his Fourth Amendment right against unreasonable search and seizures without providing any facts whatsoever as to how this violation occurred.

In *Gale v. Stori*, 608 F.Supp. 2d 629, 633 (E.D. Pa. 2009), the Court stated that a "Fourth Amendment 'seizure' of personal property occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" (citations omitted).

In *U.S. v. Nole*, 2006 WL 2085989, *2 E.D. Pa. (7-25-06), the Court held:

> The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The ability to exercise one's Fourth Amendment right, however, is

14

limited. It is considered a "personal right that must be invoked by an individual.... [T]he extent to which [it] protects people may depend upon where those people are." *Minnesota v. Carter,* 525 U.S. 83, 88 (1998) (internal citation omitted); *see also Katz v. United States,* 389 U.S. 347, 351 (1967) ("The Fourth Amendment protects people, not places."). The Supreme Court has limited the "capacity to claim the protection of the Fourth Amendment" to those who have a "legitimate expectation of privacy in the invaded place." *Rakas v. Illinois,* 439 U.S. 128, 143 (1978). Moreover, the expectation of privacy must be a "reasonable one." *Florida v. Riley,* 488 U.S. 445, 455 (1989) (O'Connor, J., concurring).

*See also  Gale v. Stori,* 608 F.Supp. 2d at 635.

To state an illegal search and seizure claim against Defendants, Plaintiff must allege that the actions of Defendants constituted a "search and seizure" under the Fourth Amendment and that the search and seizure was "unreasonable."  *See Manolovich v. Park*, 2010 WL 4366265, *7 (W.D. Pa. 10-28-10).

In *Manolovich*, 2010 WL 4366265, *7, the Court stated:

The Court of Appeals for the Third Circuit has stated the following:

The fundamental task of any Fourth Amendment analysis is assessing the reasonableness of the government search. If the search is reasonable, there is no constitutional problem, for the Fourth Amendment only protects individuals from unreasonable searches and seizures. Determining whether a search is reasonable depends on all the circumstances surrounding the search or seizure and the nature of the search or seizure itself, and involves balancing on the one hand, the degree to which [the search] intrudes upon an individual's privacy and, on the other hand, the degree to which [the search] is needed for the promotion of legitimate government interests.

*United States v. Sczubelek,* 402 F.3d 175, 182 (3d
Cir.2005) (citations and quotation marks omitted).

Additionally, "the Fourth Amendment does not prohibit all searches but only those

that are unreasonable." *U.S. v. Colbert*, 2011 WL 3360112, *7 (8-3-11). Further, "[a]

Plaintiff's Fourth Amendment rights are implicated only if the conduct of the Defendant

infringed upon a reasonable expectation of privacy." *Roberts v. Mentzer*, 2009 WL

1911687, * 3 (E.D. Pa. 7-2-09) (citing *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987)).

First and foremost, from what can be gleaned from the facts provided by Plaintiff, the

letters that led to the arrest Plaintiff were handed to Defendants by Pamela Ross, and,

therefore, because they were in the possession of a third party, i.e. Pamela Ross, Plaintiff

did not retain a reasonable expectation of privacy in these letters. However, Plaintiff

clearly had a reasonable expectation of privacy in his place of residence. Furthermore, it is

undisputed that a search of Plaintiff's residence and a seizure of his personal items

occurred as evidenced in Exhibits found on pages forty (40) through forty-five (45) (i.e. the

Affidavit of Probable Cause, Search Warrant Application, and the Receipt/ Inventory of

Items Seized) of Plaintiff's Complaint.

The only question remaining, then, is whether the search and seizure of Plaintiff's

personal property was reasonable. The Third Circuit in *U.S. v. Vosburgh* highlighted the

standards for issuing and reviewing a search warrant, when it stated the following:

The applicable standards for issuing and reviewing a search warrant were
set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d
527 (1983):

> The task of the issuing magistrate is simply to make a practical,
> common-sense decision whether, given all the circumstances set
> forth in the affidavit before him, . . . there is a fair probability that
> contraband or evidence of a crime will be found in a particular
> place.  And the duty of a reviewing court is simply to ensure that
> the magistrate had a "substantial basis for . . . conclud[ing]" that
> probable cause existed.

*United States v. Vosburgh*, 602 F.3d 512, 526 (3d Cir. 2010).

Furthermore, *Gates* mandates that we owe "great deference" to the magistrate's probable cause determination.  *Gates*, 462 U.S. at 236.  However, as stated in *United States v. Zimmerman*, we need not simply "rubber stamp" the magistrate's probable cause determination.  *United States v. Zimmerman*, 277 U.S. F. 3d 426, 432 (3d. Cir. 2002). The *Gates* Court ultimately held that "a fair probability that contraband or evidence of a crime will be found in a particular place" will justify a search and that confirmation of anonymous tips may give rise to probable cause.  In *U.S. v. Burton*, 404 Fed. Appx. 617, 621-22 (3d. Cir. 2010), the Third Circuit was faced with a set of facts similar to the facts of the case at hand. The defendant in *Burton* argued that evidence seized during three searches should have been suppressed due to lack of probable cause.  The court of appeals held that the searches were reasonable under the Fourth Amendment because warrants for two of the searches of residences were supported by probable cause because anonymous tips and an informant's statements were corroborated.  In *Burton*, the Third Circuit stated,

> The corroboration of the proven reliable DEA informant's statements and
> the experienced agent's reasonable belief that the house at 7209
> Kindred Street contained contraband likewise gave rise to probable
> cause sufficient to support issuance of the search warrant for that

residence. *See United States v. Whitner*, 219 F.3d 289, 297 (3d Cir. 2000)("[A] number of . . . courts of appeals have held that evidence of involvement in the drug trade is likely to be found where the dealers reside."). . .

*Burton*, 404 Fed. Appx. at 621.

Exhibits in pages forty (40) through forty-five (45) of Plaintiff's Complaint contain the Affidavit of Probable Cause prepared by Defendants Hippensteel, Strickland and Rush, the Search Warrant Application prepared by Defendant Rush, and the Receipt/ Inventory of Items Seized. (Doc. 1, pp. 40-45). The Affidavits of Probable Cause provided by Defendants Hippensteel, Strickland, and Rush detail as to why these Defendants were applying for a search warrant for Plaintiff's residence, including the following:

On 8/23/2011, I responded to the Center for Dermatology located at 2000 Scotland Avenue to speak with the victim, Pamela Ross in regards to unwanted letters she had been receiving at the business since June 21, 2011. Ross explained that she had treated a client at the business for a health problem. She also had seem him on July 22, 2011 for a follow-up. On July 22, 2011, the business began receiving letters from the Defendant Eugene Manning. The letters were "thank you" letters to the business and Ross in regards to his treatment. Another follow-up appointment was scheduled for August 4, 2011 in which Manning was again seen by Ross. Following this appointment, the letters began to arrive at the business daily. The letters contained remarks of asking Ross how she was doing, telling Ross about his life, asking Ross if she would swing under a tree with him. One letter contained a CD entitled "I Need You Now." Another letter contained a stick. Another letter stated that Ross's husband must think he's the king of the world to be married to Ross because if she would be with Manning he would feel that way. Ross stated that Manning called the business numerous times to speak with her as well as other employees.

Ross wanted the letters to stop and advised that she was becoming afraid that Manning might harm her. Detective Baker and I were able to make contact with Manning and spoke with him in length about [] his course of conduct. Detective Baker and I warned Manning to cease all contact

18

with Ross and also informed him that he was no longer to have any contact with anyone at the Center for Dermatology.  He was also warned that he was not allowed on the property of the Center for Dermatology.  Manning advised us that he would not contact the business or Ross anymore.

On 08/23/2011, Ross reported that she had received text messages from phone number (717) 414-0030.  The text messages stated that "this is Gene."  This made Ross even more concerned and fearful that Manning was going to harm her since he was now contacting her on her cell phone.  I called phone number (717) 414-0030 and it went to a voice mail which stated he was Gene.  Based upon my personal contact with Gene, I knew that the voice on the voice mail was that of Eugene Manning.  I played the voice mail for Detective Baker and he too agreed that the voice on the voice mail was that of Eugene Manning.
On 09/01/2011, the Center for Dermatology received another three page letter from Manning.  One letter was dated by Manning as being written on August 27, 2011.  This letter detailed that Manning would not accept the certified letter, which was a no trespass letter, that the Center for Dermatology had mailed him.  The other two pages of letters were dated on August 31, 2011.  The first page of these letters again entailing that he would not accept any mail from them.  The second page of these letters dated August 31, 2011 had Pamela Ross' name on it and stated that Manning took Ross' "pleasant personality out of context."  This letter is signed by Eugene Manning.  Ross stated that she was becoming even more afraid because she did not think Manning would stop his course of conduct.  She also stated that it was putting stress on her home life as her husband was upset with Manning's course of conduct.

(Doc. 1, p. 40, Affidavit of Probable Cause by Defendant Hippensteel).

Based on this extensive amount of factual information provided in the Affidavit of

Probable Cause supporting the Application for the Search Warrant, we find it is clear that

the search of Plaintiff's residence was objectively reasonable.  Clearly, there was "a fair

probability that contraband or evidence of a crime will be found in a particular place" thus

justifying the search and there were numerous confirmations of the letters and phone calls

placed to Pamela Ross by Plaintiff Manning, which when combined with the probability

that evidence that Plaintiff was stalking Pamela Ross would be found, give rise to probable cause. *See Gates, supra*.

Furthermore, the items seized were within the confines of the Search Warrant Application signed by the issuing magistrate judge. The Application for Search Warrant identifies the following items to be search for and seized: "letters of correspondence between Eugene Manning and Pamela Ross in various forms of stationary. The letters are addressed to Pamela Ross and sometimes the Center for Dermatology." (Doc. 1, p. 43). The Receipt/ Inventory of Seized Property included the following: "bundles of letters addressed to Pamela Ross from Gene [and a] CD in plastic case with a note to Pamela written on it." (Doc. 1, p. 45). All of this items were included in the list of items to be searched for and seized.

Therefore, we will recommend that Plaintiff's Fourth Amendment unreasonable search and seizure claim against Defendants Hippensteel, Strickland, Peterson, Rush and Johnson be dismissed with prejudice because it is clear that the search was objectively reasonable and supported by a search warrant that was substantially supported by probable cause, as determined by the magistrate judge who signed the Application for a Search Warrant prepared by Defendant Rush. We find it would be futile to allow Plaintiff to file an Amended Complaint with regards to his Fourth Amendment unreasonable search and seizure claim because it is clear based on the facts and Exhibits  provided by Plaintiff herself that he cannot meet the requirements necessary to properly plead a Fourth Amendment unreasonable search and seizure claim. *See Grayson, supra*.

Plaintiff also raises a First Amendment retaliation claim based on his allegation that Defendants Hippensteel, Strickland, Peterson, Johnson, Rush, and Arnold engaged in malicious prosecution of Plaintiff because these Defendants arrested him and charged him with thirty (30 unidentified counts based on false accusation contained in the Affidavits of Probable Cause for the Search Warrant, in the Application for the Search Warrant, and in testimony provided during Plaintiff's trial which ultimately led to Plaintiff being convicted of stalking and sentenced to prison.  As a result, Plaintiff avers that he was incarcerated.

However, Plaintiff's malicious prosecution claim raised under the theory of retaliation in violation of the First Amendment are *Heck* barred and subject to dismissal. Plaintiff has provided this Court with no evidence whatsoever that his conviction and/ or sentence has been overturned.  In fact, Plaintiff is still incarcerated for his stalking conviction at the Franklin County Jail.

In *Taylor v. JFC Staffing Assoc.*, 690 F. Supp. 2d 357, 375-77 (M.D. Pa. 2009), the Court stated:

> In *Hartman v. Moore,* 547 U.S. 250, 258, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006), the Supreme Court held that, in a case in which the plaintiff is alleging a claim of First Amendment retaliation in the form of an arrest and prosecution, the plaintiff must also plead and prove the absence of probable cause supporting the prosecution. Plaintiff has neither pled nor proven the absence of probable cause. This alone is sufficient to defeat Taylor's claim; however, his claim is fatal for a more significant reason: It is barred by his agreement to perform community service in exchange for expungement of his arrest.

In *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court announced what is called the "favorable termination rule," which forecloses certain § 1983 actions for plaintiffs who have been convicted and sentenced. In *Heck,* the Supreme Court stated:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.... A claim for damages bearing relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id.* at 486-87, 114 S.Ct. 2364 (emphasis in original).

As stated, Plaintiff admittedly has been in prison for ten (10) months for his conviction of stalking Pamela Ross, and admittedly will remain in jail for this conviction for an indefinite amount of time. Therefore, it is clear that neither Plaintiff's conviction nor his sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus.

Therefore, we will recommend that all Plaintiff's First Amendment retaliation claim in the form of malicious prosecution raised in his §1983 action against Defendants Hippensteel, Strickland, Peterson, Johnson, Rush and Arnold be dismissed with prejudice as barred by *Heck.* The Third Circuit has held that a Plaintiff whose Complaint fails to state

a cognizable claim is entitled to amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002); *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004). Based on the above discussion, we find futility in allowing Plaintiff to amend his First Amendment malicious prosecution claim.

**V.      RECOMMENDATION**

Based on the foregoing discussion, we respectfully recommend that the Court:

1.      DISMISS WITH PREJUDICE Plaintiff's claim for monetary damages against Defendants in their official capacities.

2.      DISMISS WITH PREJUDICE Defendants Ross, Mukherjee, Epstein and Summit Health Chambersburg Hospital.

3.      DISMISS WITH PREJUDICE Plaintiff's Fourth Amendment unreasonable search and seizure claim.

4.      DISMISS WITH PREJUDICE Plaintiff's First Amendment malicious prosecution claim.

5.      DISMISS WITHOUT PREJUDICE Plaintiff's Fourteenth Amendment due process claim.

6.      DISMISS WITHOUT PREJUDICE Plaintiff's Fourth Amendment false arrest claim.

7.      REMAND the case to the undersigned for further proceedings.


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated: July 17, 2013**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EUGENE DOUGLAS MANNING,    :    CIVIL ACTION NO. **1:CV-13-0831**
    :
        Plaintiff    :    (Judge Jones)
    :
        v.    :    (Magistrate Judge Blewitt)
    :
PAMELA ROSS, *et al.*,    :
    :
        Defendants    :

_____

**NOTICE**

        **NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report**

**and Recommendation** dated **July 17 , 2013.**

        Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in 28
> U.S.C. § 636 (b)(1)(B) or making a recommendation for the  disposition of a
> prisoner case or a habeas corpus petition within fourteen (14) days after being
> served with a copy thereof.  Such party shall file with the clerk of court, and
> serve on the magistrate judge and all parties, written objections which shall
> specifically identify the portions of the proposed findings, recommendations or
> report to which objection is made and the basis for such objections.  The
> briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or specified
> proposed findings or recommendations to which objection is made and may
> accept, reject, or modify, in whole or in part, the findings or recommendations
> made by the magistrate judge.  The judge, however, need conduct a new

hearing only in his or her discretion or where  required by law, and may
consider the record developed before the magistrate judge, making his or her
own determination on the basis of that record.  The judge may also receive
further evidence, recall witnesses or recommit the matter to the magistrate
judge with instructions.

Failure to file timely objections to our foregoing Report and Recommendation may
constitute a waiver of any appellate rights.


                                        **s/ Thomas M. Blewitt**
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**


**Dated: July 17, 2013**